UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE PROCTER & GAMBLE COMPANY,

    Plaintiff,

vs.

CAO GROUP, INC.,

    Defendant.

Case No. 1:13-cv-337

Judge Timothy S. Black

**ORDER DENYING PLAINTIFF'S MOTION TO BIFURCATE (Doc. 36)**

This civil action is before the court on Plaintiff's motion to bifurcate and stay Defendant's fifth affirmative defense and fourth-sixth counterclaims (Doc. 36) and the parties' responsive memoranda (Docs. 38, 39).

## I. BACKGROUND FACTS AND PROCEDURAL POSTURE

Plaintiff filed this lawsuit to stop Defendant from allegedly infringing its patents[1] by making, selling, offering to sell, and/or importing various dental strip products. (Doc. 1). Defendant produces dental strip products that whiten teeth ("Sheer White!™ Whitening Films"), deliver fluoride (Sheer FluorX™ Fluoride Treatment Films), and desensitize teeth ("Sheer DesenZ™ Desensitizing Films"). (*Id.* at ¶¶ 10, 12, 14).

On July 1, 2013, Defendant responded in part by filing affirmative defenses and counterclaims. (Doc. 14). In addition to asserting the typical patent defenses of non-infringement and invalidity (AAD2 at ¶¶ 35-36), Defendant asserted that the '569 and '811 patents are unenforceable due to alleged patent misuse (*id.* at ¶¶ 49-78 (Fifth

---

[1] The patents-in-suit are United States Patent 5,989,569 ("the '569 patent"); United States Patent 6,045,811 ("the '811 patent"); and United States Patent 7,122,199 ("the '199 patent").

Affirmative Defense, the "Patent Misuse Defense")). Defendant also brought a counterclaim seeking a declaration that the '569 and '811 patents are unenforceable due to alleged patent misuse. (CC at ¶¶ 19-22 (Fourth Counterclaim)). Defendant brought additional counterclaims asserting that Plaintiff violated Section 2 of the Sherman Act by monopolizing or attempting to monopolize one or more markets by enforcing certain patents allegedly procured by fraud on the Patent & Trademark Office ("PTO") and/or engaging in "sham" litigation. (*Id.* at ¶¶ 23-74) (Fifth and Sixth Counterclaims).[2]

Plaintiff maintains that Antitrust claims and patent misuse defenses are complex and costly to litigate. Moreover, proof of the Antitrust counterclaims and patent misuse defense depend on information from the patent claims. Plaintiff maintains that the counterclaims and patent misuse defense will broaden the scope of discovery and include third parties, which will cause undue complication and unnecessary cost. Accordingly, Plaintiff argues that this Court should bifurcate the Antitrust counterclaims and patent misuse defense from the patent dispute and stay all proceedings related to them, including discovery, until after resolution of the underlying patent suit. Conversely, Defendant maintains that bifurcation will create inefficient burdens and costs and prejudice its ability to mount an effective defense.[3]

## II.  STANDARD OF REVIEW

---

[2] Defendants Fourth through Sixth Counterclaims are collectively referred to as the "Antitrust Counterclaims."

[3] Defendant notes that the parties are already having discovery issues. If, after meet and confer sessions, the parties are unable to resolve discovery issues, they SHALL request an informal discovery dispute conference with the Court pursuant to S.D. Ohio Civ. R. 37.1, before filing any discovery related motions. *See also* Judge Black's Cincinnati Civil Procedures at http://www.ohsd.uscourts.gov/judges/fpblack.htm.

While not routine, a bifurcation of claims is permissible if it serves judicial economy and does not unfairly prejudice any party. *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988).[4] However, "[f]ederal courts have long adhered to the rule that bifurcation should be ordered only in exceptional cases because the piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course." Wright & Miller, Federal Practice and Procedure, § 2388 at 474 (2nd ed. 2006). Although courts are vested with virtually unlimited freedom to try the issues in the manner that trial convenience requires, *see Saxio v. Titan-C-Mtg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996), the party moving for bifurcation bears the burden of demonstrating that concerns of judicial economy and prejudice weigh in favor of granting the motion. *Ferro Corp. v. Cont'l Cas. Co.*, No. 1:06cv1955, 2008 U.S. Dist. LEXIS 108010, at *10 (N.D. Ohio Jan. 7, 2008).[5]

A decision on bifurcation should be grounded in the facts and circumstances of each case. *Saxio*, 86 F.3d at 556. In deciding whether to bifurcate a case, the Court should consider: (1) whether bifurcation would be conducive to expedition of litigation and to efficient judicial administration; (2) whether bifurcation would prejudice the

---

[4] Federal Rule of Civil Procedure 42(b) permits separate trials of any claim or issue and authorizes a court to "bifurcate a trial in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." In addition, trial courts have the inherent power and broad discretion to stay discovery until preliminary questions are determined. *Gettings v. Bldg. Laborers Local*, 349 F.3d 300, 304 (6th Cir. 2003).

[5] "With respect to both discovery and trial," the moving party has the "burden of provision that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." *Netflix, Inc. v. Blockbuster, Inc.*, Case No. C-06-02361, 2006 U.S. Dist. LEXIS 63154, at *24 (N.D. Cal. Aug. 22, 2006) (citing *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992)).

parties; and (3) whether the issues sought to be tried separately are significantly different. *GE Credit Union v. Nat'l Fire Ins.*, No. 1:09cv143, 2009 U.S. Dist. LEXIS 96085, at *6-7 (S.D. Ohio. Sept. 30, 2009) (citing *Idzojtic v. Pennsylvania R.R. Co.*, 456 F.2d 1228 (3rd Cir. 1972). There is no universal practice of bifurcating and staying antitrust claims from patent claims in infringement cases. *See, e.g., Synopsys, Inc. v. Magma Design Automation*, Case No. 05-701, 2006 U.S. Dist. LEXIS 33751, at *10-13 (D. Del. May 25, 2006) (refusing to bifurcate antitrust claims from patent claims and rejecting patentee's argument that other courts routinely do so); *Climax Molybedenum Co. v. Molychem, L.L.C.*, 414 F. Supp.2d 1007, 1014 (D. Colo. 2005) (denying bifurcation and noting "[b]ifurcation of patent and antitrust claims…is not mandated").

### III.     ANALYSIS

#### A. Duplicative Evidence

First, Plaintiff argues that Defendant's patent misuse defense and antitrust counterclaims may be rendered moot by the outcome of the initial patent infringement claims and therefore it would be more efficient to proceed on the patent infringement claims first. However, such an allegation assumes that Plaintiff will prevail on all of its infringement and validity contentions.

Moreover, although there is a considerable overlap between the issues of inequitable conduct and fraud necessary to establish a *Walker Process* antitrust claim, the elements are not identical. For example, the level of intent required to show inequitable conduct is not the same as the level of intent required to establish *Walker Process* fraud. (*See, e.g.,* Doc. 39 at PageID 268-69). Accordingly, if Defendant were to prevail on its

defense of inequitable conduct during a separate trial of the patent issues, that trial would not resolve the *Walker Process* counterclaim. Instead, the Court would be forced to empanel a second jury to consider the same allegedly material misrepresentations made by the same P&G employees regarding the same patents to the same Patent Office officials under a different scienter standard.

When separate trials would involve overlapping evidence, courts frequently deny motions to bifurcate. *Baxter Int'l, Inc. v. Baxter Healthcare Corp.*, No. 89-C-9460, 1991 U.S. Dist. LEXIS 19637 (N.D. Ill. Dec. 18, 1991) (denying bifurcation of antitrust claims and stating: "The matters in the counterclaims do not seem so closely related to the patent claim that they would be determined by its validity nor so distantly related that they should not be tried at the same time"). Under these circumstances, bifurcation only serves to increase the burdens on the litigants, the Court, and the witnesses. *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 624 (N.D. Ill. 2000) ("It goes without saying that if proof overlaps substantially, the parties, the witnesses, and the Court would be inconvenienced by the presentation of the same evidence several times").

### B. Duplicative Discovery

Next, Plaintiff argues that bifurcating and staying antitrust issues will promote efficiency and convenience.

While bifurcating and staying the antitrust issues would certainly reduce the requisite discovery, there is a substantial overlap between the patent and antitrust claims, and overlap weighs strongly in favor of consolidated discovery and trial. *Real*, 195 F.R.D. at 624. In fact, bifurcation may actually increase discovery disputes regarding

what discovery requests are properly directed at "patent" issues and which are directed at "antitrust" issues.  For example, both Defendant's *Walker Process* counterclaim and inequitable conduct defense arise out of Plaintiff's alleged misleading representations to the PTIO in the prosecution of the '569 and '811 Patents.  The Federal Circuit has "long recognized that a *Walker Process* counterclaim and an affirmative defense of inequitable conduct share common factual elements."  *Cabinet Vision v. Cabnetware*, 129 F.3d 595, 600 (Fed. Cir. 1997).  However, the *Walker Process* antitrust claims require higher levels of scienter and materiality than required to establish Plaintiff's inequitable conduct.  Therefore, determination that Plaintiff engaged in the inequitable conduct will not significantly narrow the issues for a subsequent antitrust trial.  *See Climax*, 414 F. Supp.2d at 1014.

### C. Jury Confusion

The Court finds the issue of jury confusion to be premature at this stage in the litigation.  Even if this Court ultimately decides that judicial economy is served by separating the issues into two trials, or two stages of a single trial, that determination can be made closer to trial.  *See, e.g., Matsushita Elec. Indus. Co. v. CMC Magnetics Corp.*, No. 06-04538, 2007 U.S. Dist. LEXIS 8480, at *9 (N.D. Cal. Jan. 29, 2007) (denying motion to bifurcate at early stage of discovery because doing so "would foreclose the possibility of trying the issues at the same time" and would limit the court's ability to employ "some other plan for bifurcating [that] might prove more advantageous later in

the proceedings").[6] Moreover, since the patent issues require consideration of much of the same evidence that is involved in adjudicating the antitrust counterclaims, rather than cause confusion, trial of the patent and antitrust issues to a single jury would likely promote efficiency and consistency by avoiding the need to educate juries twice. Bifurcation would require duplicative presentations to two separate juries and would substantially delay resolution of the case.

### D. Prejudice

Finally, Plaintiff argues that bifurcation and staying discovery will not prejudice Defendant.[7]

Defendant, however, suggests that granting Plaintiff's motion will be prejudicial in many respects. Specifically, Defendant's patent misuse and antitrust counterclaims have scienter elements that require direct testimony from witnesses who were present during the events in question. Witnesses who provide testimony regarding market and sales data relevant to patent damages may later be called to provide testimony regarding market share and market power relevant to the antitrust claims. The likelihood that out-of-state witnesses would need to be re-deposed would drive up the costs and burden on Defendant.[8] Additionally, witnesses may become unavailable or have their memories

---

[6] At first blush, it does not appear that the patents at issue are significantly complex, as they relate to common consumer products that are familiar to most citizens.

[7] There is no danger that discovery on both the patent and antitrust claims together would prejudice Plaintiff or delay trial because discovery on both have just begun. (*See* Doc. 21).

[8] The Court recognizes that both parties will be subject to significant financial burdens if required to conduct discovery pertaining to the antitrust claims.

fade while the patent issues are litigated.  Defendant would also be subject to increased costs associated with two separate trials and trial preparation, and may be prejudiced in a settlement negotiation if it is unable to develop evidence regarding its affirmative defenses and counterclaims.[9]

The patents-at-issue will expire on or about June 6, 2017.  If Defendant's affirmative defense of patent misuse and its antitrust counterclaims are bifurcated, Plaintiff may engage in protracted litigation and appeals over the remaining patent issues until the Patents have expired.  Bifurcation could actually exacerbate Defendant's alleged injuries if bifurcation gives Plaintiff a marketplace advantage that it could not achieve through its patent claims.  Should Defendant prevail on its claims, it may be impossible to quantify the harm caused to it by its lost market opportunities.

Accordingly, in considering the requisite factors -- judicial economy, whether the relevant issues are significantly different, and prejudice to the parties -- the Court finds that Plaintiff has failed to carry its burden of demonstrating that bifurcation is required. *See Ferro Corp.*, 2008 U.S. Dist. LEXIS 108010.

### IV.   CONCLUSION

Accordingly, for the foregoing reasons, the Court finds that at this stage in the litigation, Plaintiff's motion to bifurcate (Doc. 36) is **DENIED**.

---

[9] The Local Patent Rules require settlement discussions and settlement conferences.  *See* S.D. Ohio Pat. R. 104.1 ("Not later than 20 days after the Invalidity Contentions are served, counsel and a party representative with full settlement authority for each of the parties…shall meet to discuss possible mediation").  *See also* S.D. Ohio Civ. R. 16.3.

**IT IS SO ORDERED**.

Date:  11/18/13                                             */s/ Timothy S. Black*
                                                            Timothy S. Black
                                                            United States District Judge

Case: 1:13-cv-00337-TSB Doc #: 41 Filed: 11/18/13 Page: 9 of 9  PAGEID #: 499