UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, | Case No. 1:13-cv-337 |
| Plaintiff, | Judge Timothy S. Black |
| vs. | |
| CAO GROUP, INC., | |
| Defendant. | |

**ORDER DENYING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT (Doc. 47)**

This civil action is before the Court on Defendant's motion for partial summary judgment (Doc. 47) and the parties' responsive memoranda (Docs. 50, 59).

### I. BACKGROUND FACTS[1]

Defendant alleges that all claims of U.S. Patent Nos. 5,989,569 (the "'569 Patent") and 6,045,811 (the "'811 Patent") are incapable of interpretation because they are ambiguous or not amenable to construction and indefinite, and, therefore, are invalid for failing to comply with 35 U.S.C. Section 112. Accordingly, Defendant moves the Court for entry of partial summary judgment declaring invalid all claims of the '569 and '811 Patents.

---
[1] *See also* Undisputed Facts at Docs. 47-1 and 50-9.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III. ANALYSIS

### A. Definiteness Requirement

United States patents are presumed valid and definite. 35 U.S.C. §§ 112, 282. "[B]ecause claim construction frequently poses difficult questions over which reasonable minds may disagree, proof of indefiniteness must meet 'an exacting standard.'" *Haemonetics Corp. v. Baxter Healthcare Corp. & Fenwal, Inc.*, 607 F.3d 776, 783 (Fed. Cir. 2010). "A claim is not indefinite merely because parties disagree concerning its

construction. An accused infringer must thus demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." *Id.* "By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity… and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." *Exxon v. Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).

To prevail on its indefiniteness claim, Defendant must demonstrate by clear and convincing evidence that the claim terms at issue are "not amenable to construction" or "insolubly ambiguous." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1250 (Fed. Cir. 2008). "[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC, v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). The definiteness requirement does not require absolute clarity, only that the terms at issue can be given reasonable meaning. A claim is not invalid when one of ordinary skill in the art can understand what is claimed. *Id.*

Indefiniteness is a legal determination related to the court's performance of its duty to construe patent claims. *BJ Servs. Co. v. Halliburton Energy Servs.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003). "A claim that is amenable to construction is not invalid on the grounds of indefiniteness." *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d

3

1366, 1371 (Fed. Cir. 2006).  Claim indefiniteness is found when a person of ordinary skill in the art could not determine the bounds of the claims.  *Halliburton Energy Servs.*, 514 F.3d at 1249 ("The common thread" in cases where the Federal Circuit has invalidated claims for indefiniteness "is that claims were held indefinite only where a person of ordinary skill in the art could not determine the bounds of the claims, *i.e.*, the claims were insolubly ambiguous.").[2]

### B.  Quantitative Limitation

First, Defendant contends that the phrase "under a pressure of less than about 250,000 Pascals" is indefinite because: (1) the patent does not specify a "standard" test to determine how much pressure a user applies when pressing down on a strip with a finger; and (2) no such test exists.

Defendant argues that the quantitative limitations render the '569 and '811 Patents indefinite, because it is impossible for those of ordinary skill in the art to quantitatively measure, or otherwise determine with any acceptable level of accuracy, a pressure in Pascals at which a strip of material "substantially conforms to the curvature of the wearer's mouth, gaps between the adjacent teeth, a shape of a tooth via permanent deformation."  (Doc. 47-1 at ¶¶ 20-21).  Defendant maintains that since such a pressure cannot be quantitatively measured or otherwise determined, the boundary of the claimed

---

[2]  Determining whether or not a claim is indefinite is "inextricably intertwined with claim construction" and "requires a construction of the claims according to the familiar canons of claim construction."  *Energizer Holdings*, 435 F.3d at 1368-69.

subject matter cannot be determined so as to allow those skilled in the art to avoid infringement. *Honeywell v. ITC*, 341 F.3d 1332, 1338-40 (Fed. Cir. 2003).

However, a "patent is not rendered invalid on the ground that the inventors failed to specify the method to be used in measuring [a claimed feature] set forth in the claims." *PPG Indus. v. Guardian Indus.*, 75 F.3d 1558, 1563 (Fed. Cir. 1996). The claims specifically invoke typical fingertip pressures, *i.e.*, "less than about 250,000 Pascals." Not only are there commercial systems designed for the purpose of measuring fingertip pressure, such as the FingerTPS system,[3] one skilled in the art could determine the amount of pressure by pressing down on a pressure sensor using the same amount of force that was used to apply the strip to the teeth. (Doc. 47-8 at PageID 4578-4579). [4]

Accordingly, at the very least, Plaintiff has evidenced a disputed issue of fact regarding the quantitative measure of "about 250,000 Pascals," and, accordingly, the Court cannot find, as a matter of law, that it is impossible for those of ordinary skill in the art to quantitatively measure, or otherwise determine with any acceptable level of accuracy, a pressure in Pascals at which a strip of material "substantially conforms to the curvature of the wearer's mouth, gaps between the adjacent teeth, a shape of a tooth via permanent deformation." Therefore, summary judgment is improper.

---

[3] Fingertip pressure measuring methods were known when P&G filed the patent applications in 1997. Jensen, et al., "A Conductive Polymer Sensor for Measuring External Finger Forces." *J. Biomechanics*, Vol. 24, No. 9, 851-858 (1991).

[4] "The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340-41 (Fed. Cir. 2005).

### C. Size Limitation

Next, Defendant maintains that by limiting the delivery system to a size that is related to the variable size of an upper or lower row of a particular "wearer's teeth," the size is variable. Therefore, Defendant argues that those of ordinary skill in the art cannot identify the precise boundaries of the subject matter falling within the scope of the patent claims. Defendant maintains that it is unclear whether the claimed delivery system must be "sized to fit an upper or lower row" of all persons, or just any one person (be it a child or adult). *See, e.g.,* M.P.E.P. § 2173.05(b) ("A claim may be rendered indefinite by reference to an object that is variable.").

Patentees can define the dimensions of a claimed invention in terms of the environment in which it is to be used, rather than requiring specific numerical limits. *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1111 (Fed. Cir. 2000) ("there is nothing wrong with defining the dimensions of a device in terms of the environment in which it is to be used."). One skilled in the art knows how to apply the patented strip to any given row of teeth by determining the dimensions of "an upper or lower row of a wearer's teeth." *Orthokinetics Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986). Accordingly, determining the dimensions of the patented strip to treat a given row of teeth is simply an exercise in common sense. *Id.*

Therefore, summary judgment is improper based simply on the variable size of an upper or lower row of teeth.

**D. Subjective Terminology**

Defendant also argues that limiting the claimed delivery system to one that is "unobtrusive so as to be wearable without interfering with normal social discourse" (Doc. 47-1 at ¶ 5), includes at least three subjective terms ("unobtrusive," "without interfering," and "normal social discourse"). "In the absence of a workable objective standard," a subjective element in a claim phrase that is "completely dependent on a person's subjective opinion" renders the claim indefinite. *Datamize*, 417 F.3d at 1350 (holding that the term "aesthetically pleasing" rendered the patent claims indefinite because the claim scope required a subjective construction).[5] Defendant speculates that a given strip "might be considered by either the wearer or an observer" as "unobtrusive" in differently-sized users, and that "people of the same size will almost certainly" have different views on what "unobtrusive" means. These speculations fall short of Defendant's burden to prove indefiniteness.

The specification identifies factors that make the patented strip "unobtrusive so as to be wearable without interfering with normal social discourse," including sufficient thinness and sufficient adherence to the teeth to minimize slippage, and the specification distinguishes the patented strip from "bulky and obtrusive" mouthguard systems of the prior art. (Doc. 47-2 at PageID 4229). The specification also discusses how the patented

---

[5] This Court finds that the term "aesthetically pleasing" is entirely subjective, whereas the terms "unobtrusive," "without interfering," and "normal social discourse," while capable of some variation, are definable. Moreover, these allegedly indefinite terms are explained in the specification.

strip minimizes interference with the activities of normal social discourse, such as "talking, drinking, etc." (*Id*. at PageID 4231). Accordingly, the specification provides adequate guidance to one skilled in the art that the "unobtrusive" phrase is not indefinite. *Xerox Corp. v. 3Com Corp.*, 458 F.3d 1310, 1323 (Fed. Cir. 2006). The Federal Circuit explained that it "measures indefiniteness according to an objective measure that recognizes artisans of ordinary skill are not mindless 'automatons.'… From that vantage point, a skilled artisan will understand the markets and the system enough to determine what is a 'standard' item." *Source Search Tech. v. Lendingtree LLC*, 588 F.3d 1063, 1077 (Fed. Cir. 2009) ("This court does not judge indefiniteness according to the subjective impressions of any particular user of the system[.]").

In addition to the specification, the prosecution history can also establish that a claim term is definite. *Ethicon v. Endo-Surgery, Inc. v. Covidien*, No. 1:11cv871, 2013 U.S. Dist. LEXIS 59379, at *30 (S.D. Ohio Apr. 25, 2013). The original claims did not include the "unobtrusive" phrase. (Doc. 47-3 at PageID 4256-4258). Plaintiff added the "unobtrusive" phrase after an interview with the Examiner on August 25, 1998, during which interview Plaintiff demonstrated the strip. (*Id.*, PageID 4276). In the interview summary from that meeting, the Examiner remarked that "[t]he transparent strip affixed to the upper front teeth…could not be seen and made an impression on the Examiner[.]" (*Id.*) The Examiner noted that the strip was "substantially transparent…[and] substantially unnoticeable by others when worn[.]" (*Id.*) Plaintiff submitted amended

claims introducing the "unobtrusive" phrase on November 9, 1998. (*Id.*, PageID 4281-4282). The Examiner later referred to the "unobtrusive" and "hardly noticeable" features of the invention when referring to the prior art in an Advisory Action dated June 30, 1999, which supports a finding that one of ordinary skill in the art understands the meaning of the "unobtrusive" phrase. (*Id.*, PageID 4301). Thus, the Examiner understood the invention's broad scope and never rejected as indefinite claims reciting the "unobtrusive" phrase.[6]

An accused infringer's use of the disputed claim language is also relevant to whether the claim language has a discernible meaning and is therefore definite. *Bancorp Servs. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1376 (Fed. Cir. 2004) (considering the infringer's use of the disputed claim language as "relevant to show that the term was in use and had a discernible meaning to at least some persons practicing in the field.").[7] Defendant describes other currently available commercial "tooth whitening strips" as made of "a thin, *unobtrusive* strip material." (Doc. 50, Ex. 6) (emphasis added).[8] Therefore, even Defendant's documents support a finding that the "unobtrusive" phrase

---

[6] Examiners are "assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *Ethicon*, 2013 U.S. Dist. LEXIS 59379 at 29-30 (quoting *PowerOasis Inc. v. Poweroasis Networks*, 522 F.3d 1299, 1304 (Fed. Cir. 2008)).

[7] Failure to consider relevant extrinsic evidence in assessing definiteness constitutes error. *Verve v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002).

[8] *Id.* (touting the SheerWhite<sup>TM</sup> product as "a thin transparent product" and stating that "the patient will be more inclined to wear it while in public, thus improving the odds of treatment compliance.").

has a discernible meaning and is not indefinite.[9]

Accordingly, the Court cannot find, as a matter of law, that the "unobtrusive" phrase has no discernible meaning and is indefinite.

### E. Plain Language Meaning of "Normal"

Next, Defendant argues that the word "normal" in the phrase "a normal force applied to deform said strip of material…during manual deformation of said strip of material" is ambiguous because "normal" could mean either "perpendicular" or "typical." (Doc. 47, PageID 4202-4205).

However, the context of the term, "normal force," indicates to one skilled in the art that "normal" modifies "force." "Normal force applied" indicates that the direction of the force is normal, *i.e.*, perpendicular. *See, e.g., Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 980 (Fed. Cir. 1999) ("Normal force (N) is simply the force applied perpendicular to a surface[.]").[10] The rest of the phrase, "during manual deformation," indicates that the "normal force" is manually "applied to deform" the strip. Thus, the phrase "normal force applied," refers to the direction of the force a user applies by pressing down on the strip using a finger.

---

[9] In fact, Defendant posted a number of videos that emphasize the thin, unobtrusive nature of its Lumist$^{TM}$ product, and how that product does not interfere with "normal social discourse" such as talking, drinking, etc. *See*, *e.g.*, "Lumist Advanced Teeth Whitening Strips." http://lumistoralcare.com/lumist_Whylumist.aspx (last visited May 10, 2014). Defendant identifies the same kinds of activities associated with "normal social discourse" that are identified in the specification, *i.e.*, "talking, drinking, etc." as well as the "no slipping" and "minimal slipping" features. (Doc. 47-2 at PageID 4231).

[10] "The normal force is always directed perpendicular to the surface." Steven Holzner, Physics for Dummies at 105 (2011).

The structure of the claim as a whole confirms this point, because the claim defines the "typical" magnitude of force in another part of the claim. Specifically, while "normal force applied" refers to the direction of applied force, the force magnitude is "a pressure less than about 250,000 Pascals[.]" (Doc. 47-2, PageID 4232). This claim language expressly refers to the "typical" force magnitudes applied by a user by pressing down on a strip to apply it to the teeth, as the specification explains. (*Id.*, PageID 4231). Defendant's alternative interpretation of "normal" as "typical" is unreasonable because it conflates force magnitude with force direction, making two different clauses of the claim redundant. *Artistocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1357 (Fed. Cir. 2013) (rejecting construction that rendered two separately-recited method steps "superfluous").

Moreover, the fact that "normal" may have different meanings depending on the context, does not make the term "normal" ambiguous. The same word takes on different meanings in a claim when used in different contexts. *Epcon Gas Sys., Inc. v. Bauer Compresors, Inc.*, 279 F.3d 1022, 1031 (Fed. Cir. 2002) (same term ("substantially") had different meanings when used in different contexts, *i.e.*, "substantially constant" as opposed to "substantially below"). In the '569 and '811 claims, "normal force applied" refers to the perpendicular force applied by the user when pressing down on the strip using a finger, whereas "normal social discourse" refers to typical social interactions, *e.g.*, "talking, drinking, etc." (Doc. 47-2, PageID 4231).

The specification confirms that "normal force" means the perpendicular force applied by a wearer when applying a strip to the teeth. For example, "[i]t is important that the necessary permanent deformation occur under minimum normal force being applied by the wearer." (Doc. 47-2, PageID 4231). The wax strip example "readily conforms to the shape of a tooth under a pressure of about 133,000 Pascals, which is the pressure generated when the wearer applies a normal force of about 3 pounds (1.36 kg) over an area of about one square centimeter." (*Id.*, PageID 4231). Here, "normal force" refers to the direction of the force applied by the user, while "about 3 pounds (1.26 kg)" refers to the force magnitude. (*Id.*) This interpretation accords with the phrase "under minimum normal force being applied by the wearer." (*Id.*) In this context, "normal force being applied by the wearer" refers to the direction of the applied force, and "minimum" refers to the force magnitude. (*Id.*) The specification uses "typical" to refer to force magnitudes:

> It has been found that wearers will press a strip onto each tooth using one finger tip having about one square centimeter surface area. They typically apply force at each tooth for one second or less. A typical application pressure ranges from about 100,000 Pascals to about 250,000 Pascals.

(*Id.*) The specification consistently uses different terminology to describe force direction ("normal") as compared to force magnitude ("typical"); the specification does not refer to force magnitudes as "normal." *Fromson v. Anitec Printing Plates, Inc.*, 132 F.3d 1437, 1442 (Fed. Cir. 1997) ("In general, technical terms are deemed to have the same meaning in the body of the specification as in the claims."). The specification explains that

"normal force" refers to a force applied in a direction perpendicular to the surface of the strip.

Accordingly, Defendant fails to evidence that the meaning of "normal" is ambiguous.

### F. Public Policy

Finally, Defendant alleges that the Court should overturn the statutory presumption of validity because the scope of the claims is unclear. Essentially, Defendant maintains that without proper notice, it is difficult to avoid infringement.

However,

> patentable inventions cannot always be described in terms of exact measurements, symbols and formula, and the applicant necessarily must use the meager tools provided by language, tools which admittedly lack exactitude and precision. If the claims, read in the light of the specifications, reasonably apprise those skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the courts can demand no more.

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 258 F.2d 124, 136 (2d Cir. 1958). Claims that have some ambiguity are not necessarily indefinite. The Federal Circuit does not require courts to construe claims in a way that "purge[s] every shred of ambiguity." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007).[11] Moreover, the Federal Circuit rejects the notion that claims are indefinite simply because an accused infringer alleges that infringement is difficult to determine. "The test for indefiniteness

---

[11] *See also Philip v. Mayer*, 77-C-454, 1979 U.S. Dist. LEXIS 8523, at *27 (E.D.N.Y. Nov. 16, 1979) ("Language is, of course, an imperfect, inexact tool.").

does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." *SmithKline Beecham Corp. v. Apolex Corp.*, 403 F.3d 1331, 1340-41 (Fed. Cir. 2005). Notice to competitors is but one purpose of the indefiniteness standard.

Defendant has failed to demonstrate by clear and convincing evidence that a skilled artisan in the field did not have notice of the patents.

## IV. CONCLUSION

Accordingly, for these reasons, Defendant's motion for partial summary judgment (Doc. 47) is **DENIED**.

**IT IS SO ORDERED**.

Date: 5/21/14                                                      */s/ Timothy S. Black*
                                                                              Timothy S. Black
                                                                              United States District Judge